UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

INGRAM BARGE COMPANY, LLC,

     Plaintiff,

v.

STEVE R. MUSGROVE, JR.,

     Defendant.

Case No. 3:17-cv-01526

Judge Eli J. Richardson
Magistrate Judge Newbern

To:    The Honorable Eli J. Richardson, District Judge

## REPORT AND RECOMMENDATION

This case presents a contract dispute between Plaintiff Ingram Barge Company, LLC, and its former employee, Defendant Steve R. Musgrove, Jr. Musgrove has not yet appeared in the action, and the Clerk of Court entered a default against him under Federal Rule of Civil Procedure 55(a) on March 27, 2018. (Doc. No. 13.) Ingram now moves for a default judgment. (Doc. Nos. 14, 18.) Because Ingram has not properly served Musgrove in accordance with Federal Rule of Civil Procedure 4, the Court lacks jurisdiction to enter a default judgment against him. The Magistrate Judge therefore RECOMMENDS that Ingram's motion (Doc. Nos. 14, 18) be DENIED; that the entry of default be SET ASIDE; and that Ingram be afforded the fourteen additional days to achieve service it requests under Rule 4(m).

## I.    Factual and Procedural Background

Ingram is a Nashville-based company that transports "commodities by barge over 12,000 miles of America's inland waterways." (Doc. No. 1, PageID# 2, ¶ 5.) Musgrove worked for Ingram until October 16, 2017, when he voluntarily terminated his employment. (*Id.* at PageID# 5, ¶ 15.)

For nearly a year before leaving Ingram, Musgrove participated in the company's Steersman Training Program, which "provides select existing associates with the training necessary to . . . become a pilot or captain of an Ingram Towboat." (*Id.* at PageID# 2, ¶ 6.) As a condition of his participation in that program, Musgrove entered into a training agreement with Ingram. (*Id.* at PageID# 2, ¶ 8.) That agreement contains an "employment commitment" clause, which requires that, "[a]s consideration for the expenses borne by Ingram to provide . . . the training and support in the Program," program participants must maintain employment with Ingram for the duration of the training and then as a pilot or captain for at least three years. (Doc. No. 1-2, PageID# 14.) The agreement also contains a liquidated damages clause, which states that a participant who does not fulfill the employment commitment must immediately pay a predetermined amount of damages. (*Id.*)

On Musgrove's last day of employment, Ingram sent him a letter asserting that he had violated the training agreement and demanding $90,312.00 in liquidated damages. (Doc. No. 1, PageID# 5–6, ¶ 16; Doc. No. 1-3.) On November 7, 2017, attorney Matthew E. Schalk sent Ingram a letter on Musgrove's behalf stating Musgrove's position that the training agreement is unconscionable and unenforceable due to Ingram's bad faith. (Doc. No. 1, PageID# 6, ¶ 19; Doc. No. 1-4, PageID# 39.) Schalk also stated that Musgrove had "no intention of paying [Ingram] $90,213.00" and that, "[i]f this matter escalates into litigation, [] Musgrove is prepared to defend his position by any legal means necessary." (Doc. No. 1-4, PageID# 40.)

Ingram filed this lawsuit against Musgrove on December 6, 2017, asserting a breach of contract claim and demanding $90,312.00 in liquidated damages, prejudgment and postjudgment interest, and litigation costs and attorney's fees. (Doc. No. 1, PageID# 6–7.) The Court issued a summons for Musgrove on December 7, 2017. (Doc. No. 5.) Ingram then sent service copies of

2

the summons and complaint to Musgrove's last known address in Paducah, Kentucky, and to Schalk by certified mail. (Doc. No. 18, PageID# 87, ¶ 3.) On December 9, 2017, "N. Bolte" signed a certified mail receipt for the service copies sent to Musgrove's Kentucky address. (Doc. No. 8-1, PageID# 52.) No certified mail receipt for the service copies sent to Schalk was returned. (Doc. No. 18, PageID# 87, ¶ 3.) On January 2, 2018, Ingram filed proof of service, stating that Musgrove had been personally served by certified mail on December 9, 2017. (Doc. No. 8, PageID# 51.)

Ingram filed an application for entry of default on January 31, 2018. (Doc. No. 9, PageID# 53.) The Clerk of Court denied that application on February 20, 2018, because Ingram had not filed an affidavit of military service as required by the Servicemembers Civil Relief Act of 2003. (Doc. No. 11, PageID# 56.) The Clerk also noted that there was no indication that Bolte, who signed the certified mail receipt, was authorized to accept service on behalf of Musgrove. (*Id.* at PageID# 56–57.)

Ingram filed a renewed application for entry of default on March 9, 2018, accompanied by an affidavit from its counsel, Brigid Carpenter, regarding Musgrove's military status and its efforts to serve process. (Doc. No. 12, PageID# 58; Doc. No. 12-1.) Carpenter affirms that, on December 29, 2017, she received a voicemail from attorney Roger Maness who stated that Musgrove "had approached [Maness] about representation in <u>this</u> matter." (Doc. No. 12-1, PageID# 61, ¶ 6 (emphasis in original).) From that voicemail, Carpenter inferred that Musgrove had received the complaint and concluded that he had been properly served. (*Id.*) When Carpenter followed up with Maness on January 8, 2018, Maness informed her that Musgrove had decided not to retain him and that Musgrove was considering bankruptcy. (*Id.* at PageID# 61, ¶ 8.) Carpenter then contacted Schalk, who stated that he no longer represented Musgrove. (*Id.* at PageID# 61, ¶ 9.)

3

The Clerk granted Ingram's renewed application for entry of default on March 27, 2018, finding that "service has been performed and [Musgrove] has received actual notice of the case against him." (Doc. No. 13, PageID# 62.) The Clerk authorized Ingram to file a default judgment motion under Rule 55(b). (*Id.*) Ingram filed that motion on April 5, 2018, accompanied by a declaration from Steve Milam, Ingram's manager of motor vessel operations; a copy of the training agreement that Musgrove signed; and other documents pertaining to Ingram's claimed damages. (Doc. Nos. 14, 14-1.) In its motion, Ingram requests $90,312.00 in liquidated damages; $9,971.47 in costs and attorney's fees; $9,031.20 in prejudgment interest; and postjudgment interest as computed by the Court. (Doc. No. 14, PageID# 64, ¶ 9.) Ingram argues that these amounts constitute a sum certain and that default judgment is therefore appropriate under Federal Rule of Civil Procedure 55(b)(1). (*Id.* at PageID# 64, ¶ 8.) In the alternative, Ingram asks the Court to enter a default judgment under Rule 55(b)(2). (*Id.* at PageID# 65, ¶ 10.)

In an April 30, 2018 order, the Court denied Ingram's Rule 55(b)(1) motion, finding that, because an award of prejudgment interest is discretionary, Ingram did not seek a sum certain. (Doc. No. 15, PageID# 80.) The Court then referred Ingram's Rule 55(b)(2) motion to the Magistrate Judge for consideration of (1) the reasonableness of the fees and costs that Ingram seeks, (2) whether an award of prejudgment interest is necessary to make Ingram whole, and (3) whether Musgrove was properly served. (*Id.* at PageID# 81.) The Court also ordered Ingram to perform searches of relevant jurisdictions to determine whether Musgrove had filed for bankruptcy. (*Id.* at PageID# 82.)

Ingram notified the Court on May 10, 2018, that it had found no record of a bankruptcy action filed by Musgrove in Kentucky or Tennessee. (Doc. No. 16, PageID# 83.) Ingram also stated that its counsel had spoken with Musgrove, who contradicted Maness's claim that Musgrove was

4

aware of this action and had considered retaining Maness to represent him. (*Id.*) Ingram asserted that, as a result, it would seek additional information from Musgrove and Maness and provide its findings to the Court. (*Id.*)

On June 18, 2018, the Court noted that Ingram had yet to provide the promised information and ordered Ingram to file a status report with "any additional evidence to support its pending motion for default judgment by July 10, 2018." (Doc. No. 17, PageID# 85.) Ingram filed the requested update, including an affidavit from its counsel Caldwell Collins on July 5, 2018. (Doc. Nos. 18, 18-1.) Collins stated that he spoke with Musgrove by telephone on May 8, 2018. (Doc. No. 18-1, PageID# 94, ¶ 4.) In that call, Musgrove explained that, although Bolte is his fiancée and they currently live together at the address to which Ingram had mailed the summons, he and Bolte were not living together at that address or in a relationship when service was attempted. (*Id.*) Musgrove also denied ever having spoken to Maness and claimed that he was unaware that this lawsuit had been filed. (*Id.*) Following Collins's call with Musgrove, Carpenter again spoke to Maness, who refused to confirm what he had previously stated about his potential representation of Musgrove, citing attorney-client privilege. (*Id.* at PageID# 95, ¶ 6.)

Ingram argues that service was completed at Ingram's "usual place of abode" when Bolte signed the certified mail receipt and that Maness's initial statement to Carpenter that Musgrove had contacted him regarding representation proves that Musgrove received actual notice of this action. (Doc. No. 18, PageID# 89–90, ¶ 11.) If the Court disagrees, Ingram requests fourteen additional days to effect service "while its Motion for Default Judgment is held in abeyance." (*Id.* at PageID# 90, ¶ 12.) Ingram also amends its fees and costs request to $14,292.97, withdraws its demand for prejudgment interest, and argues that default judgment is therefore appropriate under Federal Rules of Civil Procedure 55(b)(1) and 55(b)(2). (*Id.* at PageID# 90–91.)

5

## II.    Legal Standard

Rule 55(a) requires the clerk of court to enter a default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise . . . ." Fed. R. Civ. P. 55(a). Once the clerk has entered a default, a party can move for a default judgment under Rule 55(b). If the moving party's complaint "alleges damages for a sum certain . . . ," the clerk can enter a default judgment for that amount and costs under Rule 55(b)(1). *Am. Auto. Ass'n v. Dickerson*, 995 F. Supp. 2d 753, 756 (E.D. Mich. 2014). "In all other cases, the party must apply to the court for a default judgment" under Rule 55(b)(2). Fed. R. Civ. P. 55(b)(2). "Rule 55(b)(2) does not provide a standard to determine when a party is entitled to a judgment by default," and the decision lies within the sound discretion of the court. *Am. Auto. Ass'n*, 995 F. Supp. 2d at 756; *see also Mucerino v. Newman*, No. 3:14-cv-00028, 2017 WL 387202, at *2 (M.D. Tenn. Jan. 26, 2017). Seven factors guide the court's determination of whether default judgment under Rule 55(b)(2) is appropriate:

> (1) possible prejudice to the plaintiff; (2) the merits of the plaintiff's claim; (3) the sufficiency of the complaint; (4) the amount of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Mucerino*, 2017 WL 387202, at *2 (first citing *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986); and then citing *Marshall v. Bowles*, 92 F. App'x 283, 285 (6th Cir. 2004)). If the court finds that a default judgment should be entered, it will then "determine the amount and character of the recovery awarded." *Am. Auto. Ass'n*, 995 F. Supp. 2d at 756.

However, "[d]ue process requires proper service of process for a court to have jurisdiction to adjudicate the rights of the parties," by default or otherwise. *O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 353 (6th Cir. 2003); *see also King v. Taylor*, 694 F.3d 650, 655 (6th

Cir. 2012) ("[W]ithout proper service of process, consent, waiver, or forfeiture, a court may not exercise personal jurisdiction over a named defendant."). Proper service under Rule 4 is therefore a necessary prerequisite to entry of a default or a default judgment. *O.J. Distrib., Inc.*, 340 F.3d at 353 (holding that, when service of process is not proper, "the court must set aside an entry of default"). A court's failure to determine whether it has personal jurisdiction over a defendant before entering judgment by default constitutes reversible error. *Mucerino*, 2017 WL 387202, at *1.

### III.     Analysis

Because Musgrove resides in Kentucky, his service is governed by Federal Rule of Civil Procedure 4(e), which establishes the procedure for serving an individual within a judicial district of the United States. Fed. R. Civ. P. 4(e). That rule offers several avenues by which Ingram could have achieved proper service. Ingram could have served Musgrove as provided for under Tennessee law (the state in which this Court is located) or Kentucky law (the state in which service was attempted). Fed. R. Civ. P. 4(e)(1). Ingram could have also effected service under Rule 4(e)(2) by:

> **(A)** delivering a copy of the summons and of the complaint to Musgrove personally;
>
> **(B)** leaving a copy of each at Musgrove's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>
> **(C)** delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e)(2)(A)–(C). Ingram argues that service of Musgrove was complete when Bolte signed the certified mail receipt for the summons and complaint mailed to what Ingram asserts was Musgrove's usual place of abode. (Doc. No. 18, PageID# 89, ¶ 11.) Because that does not

7

constitute proper service under any provision of Rule 4(e), the Court lacks personal jurisdiction over Musgrove and Ingram's motion for default judgment must be denied.

### A. Rule 4(e)(1): State-law Service

Ingram correctly states that Tennessee allows for service by mail in certain circumstances. (*Id.* at PageID# 89, ¶ 10.) Tennessee Rule of Civil Procedure 4.04(10) provides that "[s]ervice by mail of a summons and complaint upon a defendant may be made by the plaintiff, the plaintiff's attorney or by any person authorized by statute." Tenn. R. Civ. P. 4.04(10). However, Rule 4.03(2) requires any party attempting service by mail to file with the clerk "'the original summons . . . ; an affidavit of the person making service setting forth the person's compliance with the requirements of [Rule 4.03(2)]; and, the return receipt . . . .'" *Hall v. Haynes*, 319 S.W.3d 564, 577 (Tenn. 2010) (quoting Tenn. R. Civ. P. 4.03(2)). "'*If the return receipt is signed by the defendant, or by a person designated by Rule 4.04 or by statute, service on the defendant shall be complete.* If not, service by mail may be attempted again or other methods authorized by these rules or by statute may be used.'" *Id.* (emphasis in original). In *Hall v. Haynes*, the Supreme Court of Tennessee explained that "Rule 4.03's explicit restriction of whom [sic] may sign the return receipt" generally requires "'that the return receipt be signed by the defendant and no one else.'" *Id.* (quoting Robert Banks, Jr. & June F. Entman, *Tennessee Civil Procedure* § 2–3(v) (2d ed. 2004)). As an example of that principle, the court discussed *Edwards v. Campbell*, in which the Tennessee Court of Appeals held that the plaintiffs failed to effect service of process by mail under Rule 4.03 even though the wife and mother of the respective defendants had signed the return receipts. *Id.* (citing No. E2000-01463-COA-R3-CV, 2001 WL 52776 (Tenn. Ct. App. Jan. 23, 2001)).

Ingram's arguments fare no better here. Musgrove did not sign the return receipt, and Ingram has not argued that Bolte was a "person designated by Rule 4.04 or by statute" to accept service on Musgrove's behalf. Tenn. R. Civ. P. 4.03(2). Further, the court's holding in *Edwards*

8

appears to foreclose that conclusion—if the signature of the defendants' wife and mother was insufficient to establish service under Rule 4.03(2), there is no reason to think that the signature of Musgrove's fiancée would be sufficient here.

Although Ingram does not argue that it served Musgrove in accordance with Kentucky law, that argument would also fail. Kentucky also allows for service by certified mail "only if the defendant personally signs for the letter when it arrives." *Fleet v. Commonwealth of Ky. Cabinet for Health & Family Servs*., No. 3:15-CV-00476, 2016 WL 1241540, at *6 (W.D. Ky. Mar. 28, 2016) (citing Ky. R. Civ. P. 4.01(1)(a) and collecting cases). The party seeking to effect service by mail must therefore provide "instructions to the delivering postal employee to deliver to the addressee only . . . ." Ky. R. Civ. P. 4.01(1)(a). Because Musgrove did not sign for the letter, Ingram has failed to effect service under Kentucky law. *See Ranger Nat. Gas, LLC v. Burns*, Civ. No. 07-202, 2009 WL 10676540, at *2 (E.D. Ky. Sept. 18, 2009) (finding that service was improper where defendants had not signed the certified mail receipts and plaintiff had failed to show that the individuals who signed were agents of the defendants); *United Steel Supply, LLC v. Buller*, No. 3:13-CV-00362, 2013 WL 3790913, at *2 (W.D. Ky. July 19, 2013) (concluding that plaintiff had not complied with Rule 4.01(1)(a) where defendant's wife signed the certified mail receipt).

## B.     Rule 4(e)(2): Other Means of Service

Nor has Ingram properly served Musgrove in accordance with Rule 4(e)'s other approved means. Ingram did not personally serve Musgrove as would meet the requirements of Rule 4(e)(2)(A). *See* Fed. R. Civ. P. 4(e)(2)(A). Ingram describes the Kentucky address where Ingram attempted service by mail as Musgrove's "usual place of abode" and therefore appears to invoke Rule 4(e)(2)(B), which authorizes a party to effect service by "leaving a copy of [the summons and complaint] at the individual's dwelling or usual place of abode with someone of suitable age

9

and discretion who resides there . . . ." Fed. R. Civ. P. 4(e)(2)(B). But federal courts regularly hold that, unless state law provides otherwise, Rule 4(e) does not authorize service by mail.[1] *Leeds v. Tex. Dep't of Family & Protective Servs.*, No. 3:14-CV-3578, 2015 WL 4736567, at *3 (N.D. Tex. Aug. 10, 2015) ("[S]ervice by certified mail does not meet the requirements of *Rule 4*."); *Kinekt Design, LLC v. Campuzano*, Civ. A. No. 12-4549, 2013 WL 4487467, at *1 (D.N.J. Aug. 19, 2013) ("Rule 4(e) does not provide for service by mail . . . ."); *Ranger Nat. Gas, LLC*, 2009 WL 10676540, at *1 (explaining that "federal law does not provide specifically for service via mail . . ."); *Lechner v. Citimortgage, Inc.*, No. 4:09-CV-302-Y, 2009 WL 2356142, at *2 (N.D. Tex. July 29, 2009) ("Service by mail does not satisfy Rule 4(e)(2)'s requirement of personal delivery."); *Clinton v. Berkeley Cty.*, No. 3:08-CV-10, 2009 WL 35331, at *5 (N.D. W. Va. Jan. 6, 2009) ("Service by certified mail is not contemplated in Rule 4."). Ingram does not point to any contrary authority that would support its position that Musgrove was properly served under Rule 4(e)(2)(B) when Bolte signed the certified mail receipt.

To the extent that Ingram argues it served Musgrove by attempting service by mail on Schalk as his former attorney, that path also reaches a dead end. Rule 4(e)(2)(C) provides that a party can be served by "delivering a copy of [the summons and complaint] to an agent authorized

---

[1]     Former Rule 4(c)(2)(C)(ii) allowed for service by mail in certain circumstances. *Friedman v. Estate of Presser*, 929 F.2d 1151, 1154 n.2 (6th Cir. 1991) (alterations in original). But the 1993 amendment to Rule 4 removed that provision, which had "misled some plaintiffs into thinking that service could be effected by mail without the affirmative cooperation of the defendant," and replaced it with current Rule 4(d), which allows a party to request, by mail, a waiver of formal service. Fed. R. Civ. P. 4(d) advisory committee's note to 1993 amendment; *see also* 4A Charles Alan Wright et al., *Federal Practice & Procedure* § 1096 (4th ed. 2018) (explaining that "Rule 4(d) offers a federal alternative to service under Rule 4(e)(2)(B) by authorizing a procedure by which the plaintiff, *by mail*, requests that the defendant waive formal service of a summons") (emphasis added).

10

by appointment or by law to receive service of process" on the party's behalf. Fed. R. Civ. P. 4(e)(2)(C). Even if Rule 4(e)(2) contemplated service by mail, there is no indication that Schalk ever had the authority to accept service on Musgrove's behalf or even that he represented Musgrove when Ingram attempted to serve Schalk. *See United States v. Ziegler Bolt & Parts Co.*, 111 F.3d 878, 881 (Fed. Cir. 1997) (explaining that "[t]he mere relationship between a defendant and his attorney does not, in itself, convey authority to accept service[,]" and therefore "the record must show that the attorney exercised authority beyond [that] relationship . . . to accept service"). Further, Ingram concedes that there is no evidence that Schalk ever received the summons and complaint because the certified mail receipt was not returned. Finally, even if Musgrove has received "actual notice of the lawsuit," as Ingram asserts (Doc. No. 18, PageID# 90, ¶ 11), such notice is no "substitute for proper service under [Rule 4]." *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 623 (6th Cir. 2004).

Because Musgrove has not been properly served, the Court is "powerless to proceed to an adjudication" and Ingram's motion for a default judgment must be denied. *King*, 694 F.3d at 655 (quoting *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 584 (1999)). Ingram has asked that the Court hold its motion for a default judgment in abeyance while it again attempts to effect service. (Doc. No. 18, PageID# 90, ¶ 12.) However, in the absence of personal jurisdiction over Musgrove, the underlying entry of a default under Rule 55(a) is also invalid and no motion for a default judgment is properly before the Court. *See O.J. Distrib., Inc.*, 340 F.3d at 355 (holding that the court need not consider whether there was good cause to set aside an entry of default under Rule 55(c) where the defendant had not been properly served).

As an alternative to a default judgment, Ingram asks for an additional fourteen days to serve Musgrove under Rule 4(m). (Doc. No. 18, PageID# 90, ¶ 12.) That rule provides that the defendant

11

must be served within ninety days of the complaint's filing. Fed. R. Civ. P. 4(m). It also provides

that the Court must extend the time for service if the plaintiff shows good cause for the failure to

effect timely service. *Id.* The Court can exercise its discretion to extend the time for service even

in the absence of a showing of good cause. *See Slenzka v. Landstar Ranger, Inc.*, 204 F.R.D. 322,

325–26 (E.D. Mich. 2001). The Court should do so here and afford Ingram an additional fourteen

days to complete service.

**IV.      Recommendation**

Musgrove has not been properly served and the Court lacks personal jurisdiction over him.

Accordingly, the Magistrate Judge RECOMMENDS that Musgrove's motion for default judgment

(Doc. No. 14) and the supplement to that motion (Doc. No. 18) be DENIED; that the Court's entry

of default be SET ASIDE; and that Ingram be provided fourteen additional days from entry of the

Court's order to serve Musgrove.

Any party has fourteen days after being served with this report and recommendation to file

specific written objections. Failure to file specific objections within fourteen days of receipt of this

report and recommendation can constitute a waiver of appeal of the matters decided. *Thomas v.

Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party

who opposes any objections that are filed may file a response within fourteen days after being

served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 8th day of March, 2019.

ALISTAIR E. NEWBERN
United States Magistrate Judge